SHARON R. SMITH (SBN 221428)
*SharonSmith@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, Suite 2800
San Francisco, California  94111
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

Attorneys for Plaintiff Hippocratic AI, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIPPOCRATIC AI, INC., | Case No. 3:23-cv-4738 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **TRADE NAME INFRINGEMENT, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION** |
| HEALTH GPT, INC., d/b/a HIPPOCRATIC HEALTH, and MUNJAL SHAH, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

COMPLAINT FOR TRADE NAME INFRINGEMENT, ETC.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Hippocratic AI, Inc. ("Hippocratic AI") hereby states this complaint for violations of the Lanham Act including trade name and trademark infringement and violations of the California Business and Professions Code, against Defendants Health GPT, Inc. d/b/a Hippocratic Health ("Health GPT") and Munjal Shah ("Mr. Shah" and collectively with Health GPT, "Defendants") as follows:

**INTRODUCTION**

1.     Defendant Mr. Shah describes himself as a "serial entrepreneur" and "angel investor."  In truth, he sought to leverage his wealth and funding from venture capitalist firms Andreesen Horowitz and General Catalyst, to intentionally bulldoze over Hippocratic AI's common law trade name and trademark rights and launch a competing or highly related product or service under the very same HIPPOCRATIC AI trade name and trademark as Plaintiff.  There is no affiliation or sponsorship between Plaintiff and Defendants.

2.     In doing so, Mr. Shah and his company, Health GPT seek to knowingly steal Hippocratic AI's hard- and long-earned goodwill and confuse Plaintiff Hippocratic AI's customers and potential investors.

3.     Making matters worse, the confusion brought on by Defendants' deliberate scheme has caused consumers to mistakenly associate Hippocratic AI with Health GPT and Mr. Shah, who both have negative reputations due to Mr. Shah's recent and well publicized role as the co-founder and CEO of the Medicare brokerage Health IQ – a company that he led into tens of millions of dollars in debt, mass layoffs, and lawsuits alleging, *inter alia*, fraud.  *See, e.g.*, Katie Jennings, FORBES,  *Lawsuits Allege This Startup Ripped Off Millions From Vendors. Andreessen Horowitz Backed The Former CEO's New Company Anyway* (July 12, 2023), https://www.forbes.com/sites/katiejennings/2023/06/12/lawsuits-allege-this-startup-ripped-off-millions-from-vendors-andreessen-horowitz-backed-the-former-ceos-new-company-anyway/?sh=7a1258e32680.

4.     In preparing to launch his latest venture, Health GPT, which purports to leverage artificial intelligence ("AI") to build a large language model ("LLM") to improve healthcare, Mr.

Shah apparently had the idea to adopt HIPPOCRATIC AI as a trade name and trademark based on Health GPT's intent-to-use the designation for Health GPT's own products or services.

5.      But as Mr. Shah knew well, Plaintiff Hippocratic AI was already using HIPPOCRATIC AI as both a trade name and trademark in connection with its revolutionary business dedicated to transforming medical education with solutions driven by AI solutions and inspired by patients.

6.      Indeed, since its founding, Plaintiff Hippocratic AI has operated under the trade name HIPPOCRATIC AI, using it in extensive advertising and promotion, including to actual and potential customers, and users of its online software platform services and investors, and on its website – hippocractic.ai.  Likewise, Hippocratic AI has offered its software services under its HIPPOCRATIC AI trademark and trade name, including on hippocrat.ai since at least as early as March 2023.  Plaintiff Hippocratic AI is transitioning away from its HIPPOCRATIC TUTOR secondary brand after establishing HIPPOCRATIC AI as its primary brand for its online platform, and Plaintiff has consistently used HIPPOCRATIC AI as its primary brand and mark for these services since at least as early as May 18, 2023.

7.      Here, it appears that Mr. Shah did some diligence and recognized that Plaintiff Hippocratic AI has prior common law rights in its HIPPOCRATIC AI trade name and trademark, and that it has invested significantly in building its brand and developing its reputation for innovation and excellence.

8.      On information and belief, Mr. Shah was aware that he could not lawfully proceed with launching any product called HIPPOCRATIC AI given Plaintiff's Hippocratic AI's pre-existing rights.

9.      Accordingly, on May 1, 2023, Mr. Shah reached out to Hippocratic AI asking if Hippocratic AI would be interested in selling its domain name, hippocrat.ai.

10.      That same day, Hippocratic AI wrote back to Mr. Shah, clearly declining his invitation.  Mr. Shah followed up and Hippocratic AI again responded, rejecting the offer clearly and stating that it valued its HIPPOCRATIC AI brand and that it had no plans to change its mark anytime soon.

11.     Unable to lawfully use HIPPOCRATIC AI given Hippocratic AI's prior rights, Defendants Mr. Shah and Health GPT elected to proceed to use them at some point in the future in spite of them.

12.     On May 11, 2023, just days after its unsuccessful attempt to lawfully acquire rights in HIPPOCRATIC AI and fully aware that Hippocratic AI had prior trade name and trademark rights, Health GPT filed a trademark application for HIPPOCRATIC AI designation with the U.S. Patent and Trademark Office ("USPTO") based on an intent-to-use the mark.  No evidence of use of the mark was provided to the USPTO.  No disclosure was made to the USPTO about the common law rights of Plaintiff Hippocratic AI in the mark and trade name HIPPOCRATIC AI.

13.     The application covers goods and services with which Plaintiff Hippocratic AI has long been using its HIPPOCRATIC AI trademark, and which are highly related to the services provided by Plaintiff Hippocratic AI's prior trademark and trade name rights.

14.     On May 16, 2023, Health GPT announced its intention to offer services similar to those of Plaintiff Hippocratic AI, namely, its intent to use an LLM in healthcare, and that Health GPT had secured $50 million in seed funding to develop the goods and/or services using the infringing HIPPOCRATIC AI designation in the future.

15.     For its part, Health GPT has never made actual trademark use of the HIPPOCRATIC AI designation, as it has not yet offered any goods or services using the HIPPOCRATIC AI designation.

16.     Defendants' intended use of the HIPPOCRATIC AI designation and the related trademark application reflect their complete and knowing disregard for Plaintiff Hippocratic AI's prior rights.  Hippocratic AI has worked diligently to build up substantial goodwill.  Consumer confusion has resulted, and will certainly continue to result, from Health GPT's infringement. Health GPT's intent to use HIPPOCRATIC AI after failing to lawfully acquire rights in HIPPOCRATIC AI indicates an express intent to misappropriate Hippocratic AI's goodwill by causing consumer confusion and – worse – its knowing, intentional, and malicious infringement.

17.     Indeed, there is already ample evidence of actual consumer confusion. Hippocratic AI has been inundated with messages and emails regarding Health GPT and its seed

funding.  Hippocratic AI has also been tagged in social media commentary about Health GPT when there is no relationship, affiliation or sponsorship between the parties.

18.     Compounding matters, Health GPT and Mr. Shah have publicly poor reputations, as Mr. Shah's prior company has been publicly accused of committing fraud and violating labor and other laws in a number of lawsuits, including in this District.  These allegations have been well documented publicly, including in the *Forbes* article cited above.

19.     Unfortunately, since Health GPT launched its infringing HIPPOCRATIC AI brand, Plaintiff Hippocratic AI has been improperly associated with Defendants and their negative reputations.  To this point, negative social media commentary intended towards Health GPT and Mr. Shah has been incorrectly affiliated with Plaintiff Hippocratic AI.

20.     The damage to Hippocratic AI's reputation as a result of this and other consumer confusion unfairly harms Hippocratic AI's ability to build its brand, keep consumers from being confused, and to acquire further investors.

21.     Accordingly, Plaintiff Hippocratic AI brings this action to protect the goodwill in its HIPPOCRATIC AI trade name and mark that it developed as an innovator and in leading the development of its LLMs and e-learning platform and to stop Defendants from unlawfully trampling its rights.

## **NATURE OF THE ACTION**

22.     This is an action at law and in equity for trade name infringement, trademark infringement, and unfair competition, arising under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), the California unfair competition statute, California Business and Professions Code §§ 14415, 14402, and 17200, and the common law.

## **JURISDICTION AND VENUE**

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1367(a).

24.     This Court has personal jurisdiction over Defendant Health GPT.  Health GPT's principle place of business is in Palo Alto, California, at 167 Hamilton Ave, 3rd Floor, Palo Alto, California 94301.

25.     This Court has personal jurisdiction over Defendant Munjal Shah.  Mr. Shah is an individual residing in Los Altos, California for significant periods of the year.

26.     Venue is proper in this district under 28 U.S.C. § 1391(b)-(d) because this is the "judicial district in which [both] defendant[s] reside[]" and there are no other defendants residing in different states in this action.

27.     Specifically, Defendant Health GPT is a corporate defendant that resides in this venue because "its contacts would be sufficient to subject it to personal jurisdiction" in this venue "if th[is] district were a separate State."  28 U.S.C. § 1391(d).

28.     Defendant Shah is a natural person domiciled in this venue and thus is a resident of this venue under 28 U.S.C. §1391(c)(1).

29.     Moreover, Defendants directly and indirectly conduct business in California, and in particular in this district; Defendants have purposefully availed themselves of conducting business in California; and the events giving rise to the claims alleged in this complaint have a substantial effect in California.

## PARTIES

30.     Plaintiff Hippocratic AI is a Delaware corporation with its principal place of business in San Francisco, CA.

31.     Defendant Health GPT is a Delaware corporation with its principal place of business in Palo Alto, CA.

32.     Defendant Munjal Shah is the CEO and founder of Defendant Health GPT.

33.     Mr. Shah is a resident of Los Altos, CA.

## BACKGROUND FACTS

### Hippocratic AI, Inc.

34.     Plaintiff Hippocratic AI was founded on December 6, 2022.

35.     Hippocratic AI is dedicated to transforming medical education with solutions that are powered by AI and inspired by patients.

COMPLAINT FOR TRADE NAME INFRINGEMENT, ETC.

**Hippocratic AI's Revolutionary Business**

36.     Hippocratic AI leverages AI and provides LLMs for healthcare education and training.

37.     Specifically, Hippocratic AI uses AI simulation to train medical students and doctors with its first-of-its kind medical e-learning platform.

38.     Hippocratic AI's platform helps users hone their clinical communication and reasoning skills by taking medical histories from LLM-powered simulated patients and by using AI-powered feedback to track their strengths and weaknesses in all domains of medical learning.

39.     On January 5, 2023, Hippocratic AI announced and launched its first product under the Hippocratic AI brand:  Hippocratic Tutor, a product sub-brand, a free AI-powered virtual clinical learning environment for medical students.

40.     Hippocratic Tutor allows students to practice patient interaction and diagnostic reasoning, while providing them with feedback to improve.

41.     On or about March 11, 2023, Hippocratic AI started offering a beta version of its software, as announced through its website hippocratic.ai and various social media accounts on March 14, 2023.



COMPLAINT FOR TRADE NAME INFRINGEMENT, ETC.

42.     That same day, users signed up and started using Hippocratic AI's beta software.

43.     On or about May 18, 2023, Hippocratic AI began offering a paid version of its software and started prominently using its trade name and overall company trademark HIPPOCRATIC AI in the top left hand corner of its website.

44.     At this time, Hippocratic AI is transitioning away from using the sub-brand HIPPOCRATIC TUTOR and has been using its primary mark HIPPOCRATIC AI for branding its platform services that were using with mark with beta and other users since at least as early as March 18, 2023.

**Hippocratic AI's Trade Name and Trademark Rights**

45.     On January 5, 2023, Hippocratic AI announced the launch of the company via social media, using the trade name HIPPOCRATIC AI.

46.     Since its founding, Hippocratic AI has consistently used the HIPPOCRATIC AI trade name.

47.     Hippocratic AI also has made common law trademark use of HIPPOCRATIC AI by offering and hosing a substantial number of beta users at least as early as March 11, 2023.

48.     Specifically, since the launch of its beta software, Hippocratic AI has consistently promoted its software using the trademark HIPPOCRATIC AI.

49.     Hippocratic AI has invested significant resources in promoting and protecting its brand, including its exclusive rights in HIPPOCRATIC AI.

50.     Hippocratic AI promotes itself and its offerings on its website, hippocratic.ai, on its social media pages, and through paid online digital banners advertisements.

51.     Since, March 11, 2023, Hippocratic AI has also made extensive use of the HIPPOCRATIC AI trade name in advertising and promoting its brand in numerous pitch meetings, including with California- and Bay Area-based venture capitalist firms.

52.     As a result of these efforts, Hippocratic AI has become well known, particularly in the AI, medical, and Bay Area communities.

53.     Consumers as well as actual and potential business partners, see HIPPOCRATIC AI and associate it, and the services offered under it, as originating from Hippocratic AI.

54.     As a result of the above, Hippocratic AI has extensive common-law trade name and trademark rights in HIPPOCRATIC AI.

55.     HIPPOCRATIC AI's common law trade name rights in HIPPOCRATIC AI have priority from consistent use at least as early as January 5, 2023.

56.     Hippocratic AI's common law trademark rights in HIPPOCRATIC AI have priority from consistent use at least as early as March 11, 2023.

**Health GPT's Intentional Infringement of Plaintiff's Hippocratic AI Mark**

57.     On, May 1, 2023, Hippocratic AI's founders, Shae McLaughlin and Liv Gorton, both received substantially identical LinkedIn correspondence from Munjal Shah, CEO of Health GPT.

58.     Mr. Shah's LinkedIn correspondence contained the subject line "$100K+ for your domain" and asked if Hippocratic AI would be willing to sell the domain name hippocratic.ai.

59.     Mr. Shah wrote:  "I am a serial entrepreneur and am starting a new company in the generative AI + healthcare space.  I was interested in buying your domain name hippocraticai.com.  Not sure if your are open to selling it but I am evaluating a number of names and need to make a decision quickly . . . .  I am willing to make an offer in the six digit range. . . ."

COMPLAINT FOR TRADE NAME INFRINGEMENT, ETC.

60.     As shown below, that same day, Hippocratic AI rejected the offer, clearly stating that it valued its HIPPOCRATIC AI brand and had no plans to change its mark anytime soon.

61.     Specifically, Ms. Gorton responded to Mr. Shah stating that Hippocratic AI was not interested in selling the domain name "for a price within the 6 figure range" but wished Mr. Shah good luck with his company.

62.     In response, Mr. Shah asked Ms. Gorton, "[a]re you sure?  Shall we at least meet up for coffee and chat about it?"

63.     Ms. Gorton wrote back:  "We really like the name and subsequent branding for what we plan to expand to into the future and therefore what to keep it for the foreseeable future."



64.     Mr. Shah did not send any further LinkedIn correspondence.

**Health GPT's Improper Use of Hippocratic AI's Trade Name and Trademark**

**A.  Health GPT's Improper Trademark Application**

65.     Unable to reach an agreement to lawfully acquire or use Hippocratic AI's intellectual property rights, Health GPT elected to proceed with its plans in spite of them.

COMPLAINT FOR TRADE NAME INFRINGEMENT, ETC.

66.     On May 1, the same day Hippocratic AI rejected Mr. Shah's six-figure offer to buy the brand, Health GPT acquired the domain name hippocraticai.com.

67.     On May 11, 2023, ten days after Mr. Shah's unsuccessful attempt to purchase the hippocratic.ai domain name, Health GPT filed U.S. Trademark Application Serial No. 97,931,623 seeking to register the word mark HIPPOCRATIC AI as a trademark with the USPTO on an intent-to-use basis.

68.     Health GPT applied to register the mark in classes 9, 42, and 44.

69.     Health GPT's application seeks to cover the various goods and services related to the use of AI and LLMs in healthcare including, *inter alia*, (1) an artificial intelligence platform built on large language model technology; (2) conversation automation applications for healthcare providers; and (3) software that uses machine learning and an artificial language model featuring information on medical cases, malpractice, public policy, medical research and studies, medical recommendations, diagnosis and treatment.

70.     As can be seen, there is substantial overlap between the applied-for goods and services and the goods and services that Hippocratic AI already promotes using its first-used HIPPOCRATIC AI mark.

71.     Other applied-for goods and services are related to Hippocratic AI's prior rights.

72.     Indeed, statements of Health GPT's website confirm that its planned services for use with HIPPOCRATIC AI overlap with how Hippocratic AI already uses HIPPOCRATIC AI.

73.     In particular, Health GPT intends to use HIPPOCRATIC AI in connecting with using AI to improve communication in the medical field, like Hippocratic AI's platform.

74.     Health GPT represents that its "Mission" is to "[d]evelop the safest LLM for healthcare," that its LLM wants to improve "bedside manner," and that it has "created novel techniques to improve [LLM] performance on the standard Medical Coder certifications."

75.     However, it is also clear from the "intent-to-use" nature of the application and from Health GPT's website, hippocraticai.com, that as of the date of this Complaint, Health GPT still is not actually offering any of the applied for goods/services.

76.     At minimum, it is clear that Health GPT did not offer any of the applied for goods/services under HIPPOCRATIC AI before Hippocratic AI acquired its common law trademark in HIPPOCRATIC AI on March 11, 2023.

77.     Statements on Health GPT's own website confirm that it still has not, and cannot, yet offer any of the applied-for goods/services such that Hippocratic AI clearly has priority of use given that Health GPT has to this date not offered goods or services using the HIPPOCRATIC AI mark in interstate commerce.

78.     For example, Health GPT writes, at https://www.hippocraticai.com/partner:  "Our LLM needs a lot more testing and co-development with the industry before it is ready to deploy to patients."  As of the date of this Complaint, this language is still present on this webpage.

79.     Health GPT also wrote, at https://www.hippocraticai.com/safety:  "Hippocratic Health will not release the model until a large number of these licensed professionals deem it safe" and "We are directly working with healthcare professionals to establish a clear framework of accountability.  We will only release it when healthcare experts agree it is safe."  As of the date of this Complaint, this language is still present on this webpage.

80.     Moreover, in correspondence between the parties, on or about June 14th, 2023, Hippocratic AI asked Health GPT to provide evidence of actual use of HIPPOCRATIC AI as a trademark.  Health GPT was unable to provide any.  Health GPT merely provided a link to the announcement of the intended use of the designation at issue.

81.     Health GPT's intent-to-use application was filed on May 11, 2023 – after Hippocratic AI established common law trade name and trademark rights in HIPPOCRATIC AI.

82.     Health GPT still has not used HIPPOCRATIC AI as a mark in commerce and cannot claim that it has priority over Hippocratic AI.  Plaintiff has clear priority for trademark and trade name infringement.

83.     As a result of the foregoing, it is clear that Health GPT's applied-for use of the mark is likely to cause confusion with Hippocratic AI's pre-existing rights and that Health GPT has no claim to priority over Hippocratic AI.

**B. Health GPT's Infringement of Hippocratic AI's Trade Name**

84.    On information and belief, on May 16, 2023, Health GPT launched its infringing "Hippocratic AI" brand (the "Infringing Brand").

85.    On information and belief, on that same day, Health GPT also launched the website for the Infringing Brand at "hippocraticai.com."

86.    As shown below, Defendant Health GPT's hippocracticai.com prominently displays "Hippocratic AI" as a trademark in the top left of its website:



87.    On hippocraticai.com, Health GPT advertises its plans to create a "safety focused" and "healthcare focused" LLM for healthcare – just like Hippocratic AI.

88.    Per Mr. Shah, "[t]he company mission is to develop the safest artificial health general intelligence in order to dramatically improve healthcare accessibility and health outcomes."

89.    On May 16, 2023, it was also announced that Health GPT, using the Infringing Brand, had secured $50 million in seed funding.

90.    Soon after, on May 23, 2023, Hippocratic AI sent correspondence to Health GPT explaining that Health GPT's Infringing Brand infringed Hippocratic AI's pre-existing intellectual property rights.

91.    In the May 23, 2023 letter, Hippocratic AI demanded that Health GPT cease using the Infringing Brand.

COMPLAINT FOR TRADE NAME INFRINGEMENT, ETC.

92.     Health GPT refused Hippocratic AI's request and continues to non-trademark use the Infringing Brand today with an intent-to-use the designation in the future.

**Health GPT's Poor Reputation**

93.     Health GPT's infringement is particularly concerning given Defendants' poor reputations.

94.     As has been widely reported, Mr. Shah's prior company, Health IQ, is alleged to have millions of dollars in unpaid invoices, tens of millions of dollars of debt, to have committed fraud, and to have violated labor and other laws.

95.     A June 12, 2023 Forbes article detailed the lawsuits and allegations against Health IQ and Mr. Shah in discussing the recent launch of Health GPT's Infringing Brand.  *See* Katie Jennings, FORBES,  *Lawsuits Allege This Startup Ripped Off Millions From Vendors. Andreessen Horowitz Backed The Former CEO's New Company Anyway* (July 12, 2023), https://www.forbes.com/sites/katiejennings/2023/06/12/lawsuits-allege-this-startup-ripped-off-millions-from-vendors-andreessen-horowitz-backed-the-former-ceos-new-company-anyway/?sh=7a1258e32680.

96.     The Forbes article wrote that Health IQ "is facing allegations of millions in unpaid invoices, tens of millions in debt — and one lawsuit is alleging fraud" and is alleged to have "ripped off millions from vendors."

97.     Health IQ has also been accused of making telemarketing robocalls which violate the Telephone Consumer Protection Act, including in a lawsuit currently ongoing in this District. *See Hoy V. Hi Q., Inc. d/b/a Health Iq*, No. 3:21-cv-4875 (N.D. Cal.).

98.     As shown below, on Glassdoor.com, a website where current and former employees anonymously review companies, a recent December 15, 2022 review gave Health IQ one star (out of five) and wrote:  "They are fraud and scammers."

1

2

3

4

5

6

7

8

9

10

11



12      99.     Another one-star Glassdoor review, shown below, and submitted on July 17, 2023

13  stated:  "Founders, CEO, and upper management completely let an organization down due to

14  several lawsuits.  Google it."

15

16

17

18

19

20

21

22

23



24  **Actual Confusion Generated by Health GPT's Infringement**

25      100.    Even in the few months since Health GPT launched the Infringing Brand, there is

26  already actual, substantial, and documented consumer confusion, as consumers incorrectly are

27  associating Hippocratic AI with Defendants and the Infringing Brand.

28

101.   As shown in the exemplary screenshots below, Hippocratic AI's LinkedIn page has been repeatedly tagged in posts discussing Health GPT's seed round.

COMPLAINT FOR TRADE NAME INFRINGEMENT, ETC.

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24



25    102.    Likewise, Hippocratic AI has been tagged in posts on X, the platform formerly

26 known as Twitter, about Health GPT, Mr. Shah, the Infringing Brand, and Health IQ.

27    103.    As shown in the screenshot below, due to this confusion, the public has incorrectly

28 accused Hippocratic AI of wrongs committed by Health IQ and Mr. Shah.

1

2

3

4

5

6

7

8

9

10

11

12



13    104.    In the May 16, 2023 tweet shown above, a Twitter user tagged Hippocratic AI and

14    wrote: "Munjal [Shah] – what happened to HealthIQ?  What about all the employees you let

15    down, and the creditors who lost money with all the investors?  What say you?"

16    105.    In a reply Tweet that same day, the user tagged Mr. Shah and wrote:  "Hopefully

17    he doesn't lose his creditors and investors in this one like he did a few months ago in Health IQ."

18    106.    In addition, both of Hippocratic AI's co-founders have received dozens of

19    messages and inquires via email and social media about Health GPT and its seed round.

20    107.    It is clear that Health GPT's infringement has caused the public to improperly

21    associate Health GPT, and their anger with Health GPT, with Hippocratic AI.

22    108.    This confusion harms Hippocratic AI's reputation, affecting its ability to promote

23    its offerings, build its use base, and acquire further investors.

24    **FIRST CLAIM**

25    **(Federal Trade Name Infringement in violation of**
**Section 43(a) of the Lanham Act – Health GPT)**

26    109.    Hippocratic AI repeats the allegations in each of the above paragraphs.

27    110.    Through extensive use of the HIPPOCRATIC AI Trade Name beginning in

28    December 2022, Hippocratic AI has developed extensive goodwill rights in the trade name.  The

18

goodwill in the HIPPOCRATIC AI is valuable and is protected by, *inter alia*, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

111.    Any use by Health GPT in the United States of HIPPOCRATIC AI as a trade name is likely to cause consumer confusion, deception, or mistake in purchasing decisions in light of Hippocratic AI's long and widespread use throughout the United States of HIPPOCRATIC AI as a trade name.

112.    Consumers exposed to Health GPT's infringing use of HIPPOCRATIC AI in the future, or any variants thereof, will falsely believe that they are dealing with Hippocratic AI when, in fact, they are dealing with Health GPT.

113.    Consumers exposed to Health GPT's HIPPOCRATIC AI trade name, or any variants thereof, will falsely believe that Hippocratic AI is associated with, sponsors, or endorses Health GPT's products or services.

114.    Any use by Health GPT of HIPPOCRATIC AI is likely to cause confusion, mistake, and deception of consumers as to the relationship between Hippocratic AI and Health GPT and the source of origin of Health GPT's products and services, and of Hippocratic AI's sponsorship or association therewith.

115.    Indeed, Health GPT's intended use of HIPPOCRATIC AI has already caused actual confusion.

116.    The goodwill of Hippocratic AI's business under the HIPPOCRATIC AI trade name is of enormous value.

117.    This goodwill is harmed and threatened by Health GPT's actions, particularly given the public's negative association with Health GPT and its founder Munjal Shah.

118.    Plaintiff Hippocratic AI has been incorrectly identified as Health GPT's "Hippocratic AI," including in social media discussion criticizing Health GPT and Mr. Shah.

119.    Health GPT's conduct is in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and such violations are ongoing.

120.     Through such conduct, Health GPT has caused and continues to cause irreparable harm to Hippocratic AI, its HIPPOCRATIC AI Trade Name, and its goodwill and reputation and has thereby damaged Hippocratic AI.

121.     Health GPT committed trade name infringement with full awareness of Hippocratic AI's pre-existing trade name rights, having unsuccessfully attempted to purchase the domain name hippocratic.ai from Hippocratic AI prior to launching its infringing brand.

122.     Health GPT's infringement is knowing, intentional and malicious.

123.     Health GPT's intentional infringement, actions and unreasonable positions warrant finding this an exceptional case in accordance with 15 U.S.C. § 1117, which awards attorneys' fees in such Lanham Act cases.

## SECOND CLAIM

### (Trade Name Infringement under California Law – Health GPT)

124.     Hippocratic AI repeats the allegations in each of the above paragraphs.

125.     Plaintiff has priority of trade name use.

126.     Health GPT's use in California of HIPPOCRATIC AI – or variations thereof – as a trade name is likely to cause consumer confusion, deception, or mistake in purchasing decisions in light of Hippocratic AI's established use throughout California of HIPPOCRATIC AI as a trade name.

127.     Health GPT's use of HIPPOCRATIC AI has caused actual confusion in the marketplace.

128.     Health GPT's conduct constitutes trade name infringement in violation of California Business and Professions Code §§ 14415 and 14402.

## THIRD CLAIM

### (Federal Unfair Competition in violation of Section 43(a) of the Lanham Act – Health GPT)

129.     Hippocratic AI repeats the allegations in each of the above paragraphs.

130.     Hippocratic AI has developed substantial common law rights in and to the HIPPOCRATIC AI trademark throughout the United States.

COMPLAINT FOR TRADE NAME INFRINGEMENT, ETC.

131.    Hippocratic AI's common law trademark rights claim priority to March 11, 2023, prior to the date of Health GPT's filing of its May 11, 2023 intent-to-use U.S. Trademark Application Serial No. 97,931,623 and prior to any actual use of HIPPOCRATIC AI as a trademark by Health GPT.  Indeed, Health GPT, to this date, has no actual trademark use of HIPPOCRATIC AI.

132.    The HIPPOCRATIC AI trademark is distinctive and has acquired meaning among consumers, who associate the HIPPOCRATIC AI trademark with Hippocratic AI.

133.    Health GPT's intent-to-use application for  U.S. Trademark Application Serial No. 97,931,623, seeking registration of the HIPPOCRATIC AI trademark is likely to cause consumer confusion with Hippocratic AI's HIPPOCRATIC AI mark and should be ordered refused and invalid by the Court.  Health GPT failed to inform the USPTO of the third-party prior use by Hippocratic AI of the trade name and mark for similar and/or overlapping goods and/or services.

134.    Health GPT acted with the knowledge that its acts were likely to cause confusion as to the origin of Health GPT's services, Health GPT's affiliation, connection or association with Hippocratic AI, and Hippocratic AI's endorsement or approval of Health GPT's services.

135.    Health GPT's conduct is in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and such violations are ongoing.

136.    Through such conduct, Health GPT has caused and continues to cause irreparable harm to Hippocratic AI, its HIPPOCRATIC AI trademark, and its goodwill and reputation and has thereby damaged Hippocratic AI.

137.    Health GPT's trademark infringement is knowing, intentional and malicious, as the acts described above were undertaken with full awareness of Hippocratic AI's pre-existing trademark rights.

138.    Health GPT's intentional infringement, actions and unreasonable positions warrant finding this an exceptional case in accordance with 15 U.S.C. § 1117, which awards attorneys' fees in such cases.

**FOURTH CLAIM**
**(Statutory Unfair Competition under**
**California Business and Professions Code – Health GPT and Mr. Shah)**

139.    Hippocratic AI repeats the allegations in each of the above paragraphs.

140.    Defendants, by virtue of their acts as alleged above, have willfully, knowingly, and intentionally engaged in acts of unfair competition under California Business and Professions Code § 17200 *et seq.*  Defendants' conduct is unfair, unlawful, and harms Plaintiff.

141.    Defendants' conduct has caused and if not enjoined, will continue to cause irreparable harm to the public and to Hippocratic AI in a manner that cannot be calculated or compensated in money damages.  Hippocratic AI has no adequate remedy at law.

142.    As a result of the foregoing, Hippocratic AI has been injured, and Defendants may have, on information and belief, received illicit profits and wrongful gains.

**FIFTH CLAIM**

**(Common Law Unfair Competition – Health GPT)**

143.    Hippocratic AI repeats the allegations in each of the above paragraphs.

144.    Since at least its founding, Hippocratic AI has made exclusive use of HIPPOCRATIC AI as a trade name and as a trademark in connection with AI-driven healthcare education and training.

145.    Health GPT's intent-to-use a confusingly similar imitation of the HIPPOCRATIC AI Trade Name and the HIPPOCRATIC AI Trademark has caused and is likely to continue causing confusion, deception, and mistake by creating the false and misleading impression that Health GPT and any goods and services it may offer are associated with Hippocratic AI, or have the sponsorship, endorsement, or approval of Hippocratic AI, when they do not.

146.    Health GPT, by virtue of its acts as alleged above, has willfully, knowingly, maliciously, and intentionally engaged in acts of unfair competition under the common law of the State of California.

147.    Health GPT's conduct has caused, and if not enjoined, will continue to cause irreparable damage to Hippocratic AI in a manner that cannot be calculated  or compensated in money damages.  Hippocratic AI has no remedy at law.

COMPLAINT FOR TRADE NAME INFRINGEMENT, ETC.

148.    As a result of Health GPT's acts, Hippocratic AI has been damaged in an amount not as yet determined or ascertainable.  At minimum, however, Hippocratic AI is entitled to injunctive relief, to an accounting of Health GPT's profits, to damages, and to costs.  In light of the deliberate and malicious use of confusingly similar imitations of the HIPPOCRATIC AI Trade Name and the HIPPOCRATIC AI Trademark, and the need to deter Health GPT from similar conduct in the future, Hippocratic AI additionally is entitled to punitive damages under California common law.

### SIXTH CLAIM
**(Contributory Infringement
Under Section 43(a) of the Lanham Act and Common Law – Mr. Shah)**

149.    Hippocratic AI repeats the allegations in each of the above paragraphs.

150.    Health GPT is engaged in illegal conduct, including the direct infringement of Hippocratic AI's trade name and trademarks rights in violation of the Lanham Act and the common law as described above and acts of unfair competition.

151.    Defendant Mr. Shah had actual knowledge of Health GPT's illegal activities from, *inter alia*, his May 1, 2023 correspondence with Hippocratic AI and written notification from counsel for Hippocratic AI.

152.    Mr. Shah deliberately disregarded these notifications and has otherwise consciously avoided learning about the full extent of illegal and infringing activities that Health GPT continues to engage in.

153.    As Health GPT's founder and CEO, Mr. Shah has materially encouraged, enabled, and contributed to Health GPT's infringing conduct.

154.    Mr. Shah therefore bears contributory liability for Health GPT's infringement and other illegal activities in violation of, *inter alia*, the Lanham Act and the common law.

155.    Mr. Shah and Health GPT's conduct has caused and if not enjoined, will continue to cause irreparable harm to the public and to Hippocratic AI in a manner that cannot be calculated or compensated in money damages.  Hippocratic AI has no adequate remedy at law.

156.    Hippocratic AI has sustained damages as a result of Mr. Shah's wrongful contributory infringement in an amount to be ascertained at trial.

## SIXTH CLAIM
### (Vicarious Infringement
### under Section 43(a) of the Lanham Act and Common Law – Mr. Shah)

157.    Hippocratic AI repeats the allegations in each of the above paragraphs.

158.    Health GPT's illegal infringement has generated enormous sums of monies for Health GPT and Mr. Shah, including $50 million in seed funding.

159.    Despite Mr. Shah's duty and right to control Health GPT as its founder and CEO, he has taken no steps to stop or otherwise prevent Health GPT's ongoing infringement.

160.    Indeed, Mr. Shah has caused and encouraged Health GPT's infringement.

161.    Mr. Shah is therefore vicariously liable for the damages caused to Plaintiff as a result of Health GPT's infringement and other illegal activities in violation of, *inter alia*, the Lanham Act and the common law.

162.    Hippocratic AI has sustained damages as a result of Mr. Shah's wrongful contributory infringement in an amount to be ascertained at trial.

## PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff Hippocratic AI respectfully prays for an order of this Court for:

## INJUNCTIVE RELIEF

For injunctive relief that:

1.    Defendants, their officers, agents, servants, employees, attorneys, parents, subsidiaries, affiliates and related companies and all persons acting for, with, by, through or under them, and each of them, be permanently enjoined and restrained from:

    a.    using in any manner the HIPPOCRATIC AI trade name or the HIPPOCRATIC AI trademark, or any word, words, or trademark or trade name likely to cause confusion, mistake, or deception therewith, in connection with the sale, offering for sale, distribution, marketing, advertising or promotion of a healthcare-focused LLM or other AI solution focused on the healthcare industry, doctors, or medical students, and related goods and services;

    b.    using any trade name, trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services

that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to the HIPPOCRATIC AI trade name or the HIPPOCRATIC AI trademark;

c.      using any trade name, trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced by Hippocratic AI or are sponsored or authorized by Hippocratic AI, or are in any way connected or related to Hippocratic AI;

d.      engaging in any other activity constituting an infringement of Hippocratic AI's trade name or trademark rights or otherwise unfairly competing with Hippocratic AI in any way; and

2.      Defendants be directed to destroy, remove the name HIPPOCRATIC AI and associated trademarks and logos from any materials, goods, services, or products that bear the name HIPPOCRATIC AI and/or associated logos, including any documents and other tangible things that discuss, describe, mention, or relate to such goods, services or products;

3.      Defendants be directed to cease selling any products or services and destroy any remaining inventory of products featuring the HIPPOCRATIC AI trade name or the HIPPOCRATIC AI trademark, or any word, words, or trademark or trade name likely to cause confusion, mistake, or deception therewith;

4.      The US Patent and Trademark Office be directed to reject and declare invalid with prejudice, based on a likelihood of confusion, Health GPT's pending trademark application for HIPPOCRATIC AI, including Trademark Application Serial No. 97,931,623;

5.      Defendants be directed to transfer to Hippocratic AI any domain names or social media accounts that are in its possession and include the term HIPPOCRATIC AI or a confusingly similar term, including hippocraticai.com;

6.      Defendants file with the Court and serve upon Hippocratic AI's counsel within thirty (30) days after entry of Judgment a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the requirements of the Injunction and Order.

## DAMAGES

1.      Defendants be required to account for and pay over to Plaintiff Hippocratic AI all profits realized by Defendants by reason of the unlawful acts alleged herein, in an amount to be proven at trial;

2.      Plaintiff Hippocratic AI be awarded all actual damages caused by the acts forming the basis of this Complaint;

3.      Based on Defendants' knowing and intentional use of confusingly similar imitations of the HIPPOCRATIC AI Trade Name and HIPPOCRATIC AI Trademark, the damages award be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a) and California Business and Professions Code § 14250;

4.      Defendants be required to pay to Plaintiff Hippocratic AI all of its costs, disbursements, and reasonable attorneys' fees that Hippocratic AI has and will incur in this action pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in the Complaint;

5.      Based on Defendants' willful and deliberate infringement of Hippocratic AI's trade name and trademark and unfair competition, and to deter such conduct in the future, Hippocratic AI be awarded punitive damages under California common law.

## OTHER RELIEF

1.      For such other and further relief as the Court may deem appropriate to prevent the infringement, disparagement, or dilution of the HIPPOCRATIC AI trade name and the HIPPOCRATIC AI trademark, and to prevent further and/or additional acts of unfair competition by Defendants.

2.      For prejudgment interest.

3.      For attorneys' fees and costs as an exceptional case under the Lanham Act, 15 U.S.C. § 1117, including from the evidence of willful infringement and Defendants' unreasonable actions.

4.      For such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff Hippocratic AI hereby demands a jury trial on all claims that are triable to a jury.

Dated: September 14, 2023

GOODWIN PROCTER LLP
Sharon R. Smith

By: ___/s/ Sharon R. Smith_____
Sharon R. Smith
*SharonSmith@goodwinlaw.com*

Attorney for Plaintiff Hippocratic AI, Inc

COMPLAINT FOR TRADE NAME INFRINGEMENT, ETC.